# EXHIBIT 1

415

NATIONAL CAPITAL
A TRUSTED FINANCIAL RESOURCE

# Master Equipment Lease Agreement

THIS MASTER EQUIPMENT LEASE AGREEMENT dated as of December 17, 2015 ("Master Lease") is made by and between **First National Capital, LLC** having an address at 1029 Highway 6 North, Suite 650-283, Houston, TX 77079 ("Lessor"), and **Ameriform Acquisition Company, LLC and Ameriform Acquisition Company DISC, Inc.** with its chief executive offices located at 1790 Sun Dolphin Drive, Muskegon, MI 49444 (each singularly and collectively referred to herein as "Lessee" and/or "Co-Lessee").

1. **Lease.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, Equipment, subject to and upon the terms set forth herein and in any Equipment Schedule executed in connection herewith (each, a "Schedule"). Each Schedule shall constitute a separate and enforceable lease incorporating all the terms of this Master Lease (each Schedule, together with this Master Lease as it relates to such Schedule, is referred to herein as a "Lease"). If any term of a Schedule conflicts or is inconsistent with any term of this Master Lease, the terms of such Schedule shall govern.

2. **Definitions.** Unless the context otherwise requires, as used in the Lease, the following terms shall have the respective meanings indicated below and shall be equally applicable to both the singular and the plural forms thereof:

"Equipment" means each item of property designated on a Schedule that will be leased by Lessee pursuant to the Lease, together with all replacement parts, additions and accessories incorporated therein or affixed thereto. Where rights to receive license fees for Software and charges for Services supplied or to be supplied to Lessee are included in the amount financed by Lessor under the Lease, references to leasing, purchases, ownership and administration of "Equipment" under the Lease shall be broadly interpreted to include such Financed Fees.

"Fair Market Rental Value" or "Fair Market Sale Value" means the value of Equipment for lease or sale, in place and in continued use, which would be obtained in an arm's length transaction between an informed and willing retail lessor or seller (under no compulsion to lease or sell) and an informed and willing retail lessee or buyer (under no compulsion to lease or purchase), assuming that Equipment is in the condition specified by Sections 10 and 11 hereof, as determined by the parties or, if the parties cannot agree, by an American Society of Appraisers certified appraiser selected by Lessor and paid for by Lessee.

"Financed Fees" means the Software license, usage, or other fees and the charges for Services, if any, specified on a Schedule.

"Guarantor" means any guarantor of Lessee's obligations hereunder.

"Initial Term Commencement Date" shall mean the first day of the calendar quarter (January, April, July or October) following Rent Commencement Date.

"Initial Term Expiration Date" shall have the meaning specified in the applicable Schedule.

"Lease Documents" means this Master Lease, a Schedule and all other documents relating to or provided in connection with a Lease, prepared by Lessor, and now or hereafter executed in connection herewith or therewith, as the same may be modified, amended, extended or replaced.

"License Agreement" means the software license agreement(s) between Lessee and Licensor relating to Software.

"Licensor" means the Supplier(s) of Software, solely in its (their) capacity as licensor of such Software.

"Purchase Agreement" means any purchase agreement or other contract between a Supplier and Lessee for the acquisition of Equipment to be leased or financed under a Lease.

"Rent" means the periodic payments due for the leasing of Equipment as set forth on the related Schedule and, where the context hereof requires, all such additional amounts as may, from time to time, be payable under a Lease. The term "Rent" shall include interim rent, if any, as described in Section 5 hereof.

"Rent Commencement Date" means, with respect to Equipment, the date on which (a) Lessor receives an executed Certificate of Acceptance for Equipment from Lessee or (b) Lessor disburses funds for the purchase of Equipment, as determined by Lessor in its sole discretion.

"Rent Payment Date" shall have the meaning specified in the applicable Schedule.

"Services" means all training, installation, transportation, handling, maintenance, custom programming, integration, technical consulting and support services relating to Equipment and specified on a Schedule.

"Software" means the software and all related documentation, corrections, updates and revisions used in connection with Equipment financed under a Schedule.

"Stipulated Loss Value" shall have the meaning specified in the applicable Schedule.

"Supplier" means the manufacturer or the vendor of the Equipment.

"Term" means the Initial Term or any Renewal Term, each as defined in Section 6 hereof, and any Extended Lease Term or Interim Term, as defined in the applicable Schedule.

3. **Ordering Equipment.** Lessee hereby assigns to Lessor all of Lessee's rights, but none of its obligations, under any Purchase Agreement related to a Lease. Lessor may (a) accept such assignment from Lessee of Lessee's rights, but none of Lessee's obligations, under any such Purchase Agreement and/or (b) issue a purchase order for the Equipment to the Supplier. Lessee shall arrange for delivery of Equipment. If Equipment is subject to an existing Purchase Agreement between Lessee and the Supplier, and Equipment has been delivered to Lessee as of the date of the Schedule applicable thereto, Lessee warrants that it has advised Lessor of the delivery date(s) of such Equipment. Lessee hereby authorizes Lessor to complete each Schedule with the serial numbers and other identification data of Equipment associated therewith as such data is received by Lessor.

4. **Delivery and Acceptance.** Upon delivery to and acceptance by Lessee of any Equipment, Lessee shall execute and deliver to Lessor a Certificate of Acceptance in form acceptable to Lessor ("Certificate of Acceptance"). **LESSOR SHALL HAVE NO OBLIGATION TO ADVANCE ANY FUNDS HEREUNDER UNLESS AND UNTIL LESSOR RECEIVES A CERTIFICATE OF ACCEPTANCE FOR SUCH EQUIPMENT EXECUTED BY LESSEE.**

5. **Rent; Delinquent Payments.** (a) Lessee shall pay Rent commencing on the Rent Commencement Date. The Initial Term shall commence on the Initial Term Commencement Date and continue on the same day of each payment period thereafter for the balance of the Term. If the Rent Commencement Date does not fall on the first day of a calendar quarter, then the first rental payment shall be calculated by multiplying the number of days beginning on the Rent Commencement Date through the last day of the calendar quarter by a daily rental equal to one-thirtieth of the Rent. Rent shall be due whether or not Lessee has received any notice that it is due, and all Rent shall be paid to Lessor at its address set forth on the Schedule, or as otherwise directed by Lessor in writing.

(b) If Lessee fails to pay any Rent or other sums under the Lease on or before the date when the same becomes due, Lessee shall pay to Lessor (in addition to and not in lieu of other rights of Lessor) a late charge equal to the lesser of five percent of such delinquent amount or the maximum permitted by law. Such late charge shall be payable by Lessee upon demand by Lessor and shall be deemed Rent hereunder. Lessee acknowledges and agrees that the late charge (i) does not constitute interest, (ii) is an estimate of the costs Lessor will incur as a result of the late payment and (iii) is reasonable in amount.

6. **Term; Survival.** With respect to any Equipment, unless otherwise specified on a Schedule, the initial term of the Lease (the "Initial Term") shall commence on the Initial Term Commencement Date and, unless earlier terminated as provided herein, shall expire on the Initial Term Expiration Date. Any renewal term of the Lease (individually, a "Renewal Term") shall commence immediately upon the expiration of the Initial Term or any prior Renewal Term, as the case may be, and, unless earlier terminated as provided herein, shall expire on the last day of the period for which the final payment of Rent is due. All obligations of Lessee hereunder shall survive the expiration, cancellation or other termination of the Term of each Lease.

7. **Location; Inspection; Labels.** Equipment shall be delivered to the location specified in the Schedule and shall not be removed therefrom without Lessor's prior written consent. Lessor shall have the right to enter upon the premises where the Equipment is located and inspect the Equipment at any reasonable time. At Lessor's request, Lessee shall (a) affix permanent labels in a prominent place on Equipment stating Lessor's interest in the Equipment, (b) keep such labels in good repair and condition and (c) provide Lessor with an inventory listing of all labeled Equipment within thirty days of such request.

EXHIBIT

1

415

8. Non-Cancelable Lease. THE LEASE IS A NET LEASE. LESSEE'S OBLIGATION TO PAY RENT AND PERFORM ITS OBLIGATIONS HEREUNDER ARE ABSOLUTE, IRREVOCABLE AND UNCONDITIONAL AND SHALL NOT BE SUBJECT TO ANY RIGHT OF SET OFF, COUNTERCLAIM, DEDUCTION, DEFENSE OR OTHER RIGHT LESSEE MAY HAVE AGAINST THE SUPPLIER, LESSOR OR ANY OTHER PARTY PROVIDED, HOWEVER, THAT NOTHING HEREIN SHALL PRECLUDE LESSEE FROM ASSERTING ANY SUCH CLAIMS IN A SEPARATE CAUSE OF ACTION. LESSEE UNDERSTANDS AND AGREES THAT NEITHER THE SUPPLIER NOR ANY SALES REPRESENTATIVE OR OTHER AGENT OF THE SUPPLIER IS AN AGENT OF LESSOR OR IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THE LEASE, AND NO SUCH WAIVER OR ALTERATION SHALL VARY THE TERMS OF THE LEASE. LESSOR IS NEITHER A SUPPLIER NOR A LICENSOR, AND LESSOR IS NOT RESPONSIBLE FOR REPAIRS, SERVICE OR DEFECTS IN EQUIPMENT. LESSEE AGREES NOT TO ASSERT AGAINST LESSOR ANY CLAIMS OR DEFENSES LESSEE MAY HAVE WITH RESPECT TO EQUIPMENT, AND UNDERSTANDS THAT IT MAY ASSERT SUCH CLAIMS AGAINST SUPPLIER OR LICENSOR.

9. Use; Alterations. (a) Lessee shall use Equipment lawfully and only in the manner for which it was designed and intended and so as to subject it only to ordinary wear and tear. Lessee shall comply with all applicable laws. Lessee shall immediately notify Lessor, in writing, upon becoming aware of any existing or threatened investigation, claim or action by any governmental authority that could adversely affect Equipment, Lessor or the Lease. Lessee, at its own expense, shall make such alterations, additions or modifications (each, a "Required Alteration") to Equipment as may be required from time to time to meet the requirements of applicable law or a governmental body. All such Required Alterations shall immediately, and without further act, be deemed to constitute "Equipment" and be fully subject to the Lease as if originally leased hereunder. Except as otherwise permitted herein, Lessee shall not make any alterations to Equipment without Lessor's prior written consent.

(b) Lessee, at its own expense, may from time to time add or install upgrades or attachments (each an "Upgrade") to Equipment during the Term; provided, that such Upgrades (i) are readily removable without causing material damage to Equipment, (ii) do not materially adversely affect the Fair Market Value, the Fair Market Rental Value, residual value, productive capacity, utility or remaining useful life of Equipment and (iii) do not cause Equipment to become "limited use property" within the meaning of Revenue Procedure 2001-28, 2001-19 I.R.B. 1156 (or such other successor tax provision), as of the date of installation of such Upgrade. Any such Upgrades shall remain the property of Lessee. Upon the expiration or earlier cancellation of the Lease, Lessee may, at its option, remove any such Upgrades and, upon such removal, shall restore Equipment to the condition required hereunder.

(c) If any Equipment covered under any Lease becomes attached or affixed to, or used in connection with, Equipment covered under another Lease hereunder (a "Related Lease"), Lessee agrees that, if Lessee elects to exercise a purchase or renewal option under any such Lease, or if Lessee elects to return Equipment under any such Lease, then Lessor, in its sole discretion, may require that all Equipment leased under all Related Leases be similarly disposed of.

10. Repairs and Maintenance. Repairs and Maintenance. Lessee, at its cost and expense, shall (a) maintain the Equipment in good repair, condition and working order; (b) properly operate and service all components of Equipment following the manufacturer's written operating and servicing procedures (and/or, as applicable, in accordance with the requirements of applicable insurance policies); (c) furnish all parts, mechanisms, devices and labor required to keep the Equipment in such condition as set forth herein above; and (d) pay all costs of the Equipment's operation. Lessee will cause any Equipment for which a service contract is generally available to be covered by such a contract which provides coverages typical as to property of the type involved and is issued by a competent servicing entity; or, alternatively, maintain such Equipment to the same standards. Replacement parts shall be free and clear of all liens, and shall otherwise constitute Equipment and be fully subject to this Lease as if originally leased hereunder.

11. Return of Equipment. Except as otherwise provided in a Schedule, upon the expiration or earlier termination or cancellation of each Lease, Lessee, at its sole expense, shall de-install, assemble, pack properly and in accordance with the manufacturer's instructions (under the supervision of persons acceptable to Lessor), including labeling of all components and hardware, and return to Lessor all, but not less than all, Equipment by delivering the Equipment to and unloading it at such location or with such carrier as Lessor shall specify. Lessee agrees that (a) Equipment, when returned, shall be in the condition required by the Lease, and (b) upon Lessor's request, if applicable, Lessee will obtain from the manufacturer (or other maintenance service provider previously approved by Lessor or manufacturer) a certificate stating that such Equipment qualifies for full maintenance service at the standard rates and terms then in effect. If, in the opinion of Lessor, any Equipment fails to meet the standards set forth above, Lessee agrees to pay, on demand, all costs and expenses incurred in connection with the repairing and restoring of such Equipment so as to meet such standards. If Lessee fails to return any Equipment as required hereunder, then all of Lessee's obligations under the Lease (including, without limitation, Lessee's obligation to pay Rent for the Equipment at the rental then applicable under the Lease) shall continue in full force and effect until such Equipment shall have been returned in the condition required under the Lease.

12. Sublease and Assignment. (a) LESSEE SHALL NOT, WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, WHICH CONSENT SHALL NOT BE UNREASONABLY WITHHELD, (i) SELL, ASSIGN, TRANSFER, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THE LEASE, EQUIPMENT OR ANY INTEREST THEREIN, (ii) RENT, SUBLET OR LEND EQUIPMENT TO ANYONE OTHER THAN LESSEE OR LESSEE'S AFFILIATES OR (iii) PERMIT EQUIPMENT TO BE USED BY ANYONE OTHER THAN THEIR RESPECTIVE QUALIFIED EMPLOYEES. LESSEE ACKNOWLEDGES THAT IT REMAINS PRIMARILY LIABLE FOR ALL OBLIGATIONS HEREUNDER NOTWITHSTANDING ANY USE BY AN AFFILIATE.

(b) Lessor, at any time with or without notice to Lessee, may sell, transfer, assign and/or grant a security interest in all or any part of Lessor's interest in each Lease or any Equipment (each, a "Lessor Transfer"). Any purchaser, transferee, assignee or secured party of Lessor (each a "Lessor Assignee") shall have and may exercise all of Lessor's rights hereunder with respect to the items to which any such Lessor Transfer relates, and Lessee shall not assert against any Lessor Assignee any claim that Lessee may have against Lessor provided, Lessee may assert any such claim in a separate action against Lessor. Upon written notice of a Lessor Transfer, Lessee shall promptly acknowledge in writing its obligations under the applicable Lease, shall comply with the written directions or demands of any Lessor Assignee and shall make all payments due under the applicable Schedule as directed in writing by the Lessor Assignee. Following such Lessor Transfer, the term "Lessor" shall be deemed to include or refer to each Lessor Assignee. Lessee will provide reasonable assistance to Lessor to complete any transaction contemplated by this subsection (b).

(c) Subject to the restriction on assignment contained in subsection (a), the Lease Documents shall inure to the benefit of, and are binding upon, the successors and assigns of the parties thereto including, without limitation, each person who becomes bound thereto as a "new debtor" as set forth in the Uniform Commercial Code ("UCC").

13. Risk of Loss; Damage to Equipment. (a) Lessee shall bear the entire risk of loss (including without limitation, theft, destruction, disappearance of or damage to Equipment from any cause whatsoever), whether or not insured against, during the Term of each Lease and until Equipment is returned to Lessor in accordance with Section 11 hereof. No such loss shall relieve Lessee of the obligation to pay Rent or of any other obligation under the related Lease.

(b) If any Equipment is lost, stolen or damaged beyond repair, or confiscated, seized or the use and/or title thereof requisitioned to someone other than Lessee (any such event being a "Total Loss"), Lessee shall immediately notify Lessor of such event. On the next Rent Payment Date following the occurrence of the Total Loss, at Lessor's option, Lessee shall either (i) replace Equipment with equipment that, in Lessor's sole opinion, is of the same manufacture, value, remaining useful life and utility as the replaced Equipment immediately preceding the replacement, assuming such replaced Equipment was in the condition required by the Lease or (ii) pay to Lessor the sum of (A) all Rent due and owing under the Lease with respect to such Equipment (at the time of such payment) plus (B) the Stipulated Loss Value for the Equipment as of that Rent Payment Date. If Lessor elects to allow replacement of Equipment as set forth in subsection (i) above, Lessee shall cause the Supplier of such replacement equipment to deliver to Lessor a bill of sale for such equipment free and clear of all liens and encumbrances, and such replacement equipment shall become Equipment subject to the applicable Lease. Upon Lessor's receipt of the bill of sale or the amounts specified in subsection (ii) above, Lessee shall be entitled to Lessor's interest in the replaced Equipment, in its then condition and location, "as is" and "where is," without any warranties, express or implied.

14. Insurance. (a) Lessee shall, at all times during the Term of each Lease and at Lessee's own cost and expense, maintain (i) insurance against all risks of physical loss or damage to Equipment for the greater of the full replacement value or the Stipulated Loss Value thereof, and (ii) commercial general liability

insurance (including blanket contractual liability coverage ) for personal and bodily injury and property damage per occurrence as stated in each Schedule. (b) All insurance policies required hereunder shall include terms, and be with insurance carriers, reasonably satisfactory to Lessor. Without limiting the generality of the foregoing, each policy shall include the following terms: (i) all physical damage insurance shall name Lessor and its assigns as lender loss payee, (ii) all liability insurance shall name Lessor and its assigns as additional insureds, (iii) the policy shall not be canceled or altered without at least thirty days advance notice to Lessor and its assigns and (iv) coverage shall not be invalidated against Lessor or its assigns because of any violation of any condition or warranty contained in any policy or application therefor by Lessee or by reason of any action or inaction of Lessee. On each anniversary of the Rent Commencement Date during the term hereof, Lessee shall deliver to Lessor certificates or other proof of insurance satisfactory to Lessor evidencing the coverage required by this section.

15. **Taxes.** Lessee shall pay when due and shall indemnify and hold harmless Lessor (on an after-tax basis) from and against any and all taxes, fees, withholdings, levies, imposts, duties, assessments and charges of every kind and nature whatsoever (including any related penalties and interest) imposed upon or against Lessor, any Lessor Assignee, Lessee or any Equipment by any governmental authority in connection with, arising out of or otherwise related to Equipment, the Lease Documents or the Rent and receipts or earnings arising therefrom and excepting only all Federal, state and local taxes on or measured by Lessor's net income. Whenever each Lease expires, terminates or is canceled as to any Equipment, Lessee, upon written request by Lessor, shall advance to Lessor the amount estimated by Lessor to be the taxes on said Equipment that are not yet payable, but for which Lessee is responsible. At Lessee's request, Lessor shall provide Lessee with Lessor's method of computation of any such estimated taxes.

16. **Lessor's Right to Perform for Lessee.** If Lessee fails to perform any of its obligations contained herein, Lessor may (but shall not be obligated to) itself perform such obligations, and the amount of the reasonable costs and expenses of Lessor incurred in connection with such performance, together with interest on such amount at the lesser of eighteen percent per annum or the maximum permitted by law, shall be payable by Lessee to Lessor upon demand. No such performance by Lessor shall be deemed a waiver of any rights or remedies of Lessor or be deemed to cure the default of Lessee hereunder.

17. **Personal Property; Liens.** Lessee represents and warrants that the Equipment is, and shall at all times remain, fully removable personal property notwithstanding any affixation or attachment to real property or improvements. Lessee shall at all times keep Equipment free and clear from all liens and encumbrances of any kind or nature other than those created by, through or under Lessor. If, in violation of the foregoing covenant, any prohibited lien or encumbrance shall attach to Equipment, Lessee shall (a) give Lessor immediate written notice thereof and (b) promptly, at Lessee's sole cost and expense, take such action as may be necessary to discharge such lien.

18. **Default; Remedies.** (a) As used herein, the term "Default" means any of the following events: (i) Lessee fails to pay any Rent or other amount due under a Lease within ten days after the same shall have become due; (ii) Lessee or any Guarantor becomes insolvent or makes an assignment for the benefit of its creditors; (iii) a receiver, trustee, conservator or liquidator of Lessee or any Guarantor of all or a substantial part of Lessee's or such Guarantor's assets is appointed with or without the application or consent of Lessee or such Guarantor, respectively; (iv) a petition is filed by or against Lessee or any Guarantor under any bankruptcy, insolvency or similar law; (v) Lessee or any Guarantor violates or fails to perform any provision or covenant of either this Lease, or Lessee is in Default (not cured or waived prior to the expiration of any applicable cure period, if any) under any other loan, lease or credit agreement (including but not limited to all credit facilities or agreements provided by any financial institution) or any acquisition or purchase agreement with Lessor or any other party; (vi) any warranty or representation made by Lessee herein proves to have been false or misleading when made; (vii) there is a material adverse change in Lessee's or any Guarantor's financial condition since the related Rent Commencement Date; (viii) Lessee or any Guarantor merges or consolidates with any other corporation or entity, or sells, leases or disposes of all or substantially all of its assets or there is any change in the controlling ownership of Lessee or any Guarantor, in each case, without the prior written consent of Lessor (which consent shall not be unreasonably withheld); (ix) Lessee or any Guarantor, if an individual, dies or, if not an individual, is dissolved; or (x) any filing by Lessee of a termination statement for any financing statement filed by Lessor while any obligations are owed by Lessee under a Lease. A Default with respect to any Lease shall, at Lessor's option, constitute a Default for all Leases and any other agreements between Lessor and Lessee.

(b) Upon the occurrence of a Default, Lessor may do one or more of the following as Lessor in its sole discretion shall elect: (i) proceed by appropriate court action to enforce performance by Lessee of the related Lease or to recover damages, including incidental and consequential damages, for the breach thereof; (ii) cause Lessee, at its expense, promptly to assemble Equipment and return the same to Lessor at such place as Lessor may designate in writing; (iii) by notice in writing to Lessee, cancel or terminate the related Lease, without prejudice to any other remedies hereunder; (iv) enter upon the premises of Lessee or other premises where any Equipment may be located and, without notice to Lessee and with or without legal process, take possession of and remove all or any such Equipment without liability to Lessee by reason of such entry or taking possession, and without such action constituting a cancellation or termination of the Lease unless Lessor notifies Lessee in writing to such effect; (v) by written notice to Lessee specifying a payment date (the "Remedy Date"), demand that Lessee pay to Lessor, and Lessee shall pay to Lessor, on the Remedy Date, as liquidated damages for loss of a bargain and not as a penalty, a sum equal to (A) any unpaid Rent due prior to the Remedy Date (together with interest on such amount at the lesser of eighteen percent per annum or the maximum permitted by law from the Remedy Date to the date of actual payment), plus (B) the Stipulated Loss Value; (vi) sell Equipment at public or private sale or hold, keep idle or lease to others any Equipment; and (vii) exercise any other right or remedy available to Lessor under applicable law. In addition, Lessee shall be liable for all reasonable costs, expenses, and legal fees incurred in enforcing Lessor's rights under the Lease, before or in connection with litigation or arbitration and for any deficiency in the disposition of the Equipment. Lessor's recovery hereunder shall in no event exceed the maximum recovery permitted by law.

(c) If a Default occurs, Lessee hereby agrees that ten days' prior notice to Lessee of any public sale or of the time after which a private sale may be negotiated shall be conclusively deemed reasonable notice. None of Lessor's rights or remedies hereunder are intended to be exclusive, but each shall be cumulative and in addition to any other right or remedy referred to hereunder or otherwise available to Lessor at law or in equity, and no express or implied waiver by Lessor of any Default shall constitute a waiver of any other Default or a waiver of any of Lessor's rights.

(d) With respect to any exercise by Lessor of its right to recover and/or dispose of any Equipment or any other collateral securing Lessee's obligations under any Lease, Lessee acknowledges and agrees that Lessor may dispose of Equipment on an "AS-IS, WHERE-IS" basis, in compliance with applicable law and with such preparation (if any) as Lessor determines to be commercially reasonable. Lessee shall remain liable for any deficiency in the disposition of the Equipment, and any purchase by Lessor of the Equipment may be through a credit to some or all of Lessee's obligations under any Lease.

19. **Notices.** All notices and other communications hereunder shall be in writing and shall be transmitted by hand, overnight courier or certified mail (return receipt requested), US postage prepaid. Such notices and other communications shall be addressed to the respective party at the address set forth above or at such other address as any party may, from time to time, designate by notice duly given in accordance with this section. Such notices and other communications shall be effective upon the earlier of receipt or three days after mailing if mailed in accordance with the terms of this section.

20. **Indemnity.** Lessee shall indemnify and hold harmless Lessor and each Lessor Assignee, on an after tax basis, from and against any and all liabilities, causes of action, claims, suits, penalties, damages, losses, costs or expenses (including attorneys' fees), obligations, liabilities, demands and judgments (collectively, a "Liability") arising out of or in any way related to: (a) Lessee's failure to perform any covenant under the Lease Documents, (b) the untruth of any representation or warranty made by Lessee under the Lease Documents, (c) the order, manufacture, purchase, ownership, selection, acceptance, rejection, possession, rental, sublease, operation, use, maintenance, control, loss, damage, destruction, removal, storage, surrender, sale, condition, delivery, return or other disposition of or any other matter relating to any Equipment or (d) injury to persons, property or the environment including any Liability based on strict liability in tort, negligence, breach of warranties or Lessee's failure to comply fully with applicable law or regulatory requirements; *provided*, that the foregoing indemnity shall not extend to any Liability to the extent resulting solely from the gross negligence or willful misconduct of Lessor.

21. **Fees and Expenses.** Lessee shall pay all reasonable costs and expenses of Lessor, including, without limitation, attorneys' and other professional fees, returned check or non-sufficient funds charges, processing fees, the fees of any collection agencies and appraisers and all other costs and expenses related to any sale or re-lease of Equipment (including storage costs) incurred by Lessor in enforcing any of the terms, conditions or provisions hereof or in protecting Lessor's rights hereunder.

415

22. **Financial and Other Data.** During the Term hereof, Lessee shall furnish Lessor (a) as soon as available, and in any event within one hundred twenty days after the last day of each fiscal year, financial statements of Lessee and each Guarantor and (b) from time to time as Lessor may reasonably request, other financial reports, information or data (including federal and state income tax returns) and quarterly or interim financial statements of Lessee and each Guarantor. All annual financial statements shall be audited (or if audited information is not available, compiled or reviewed) by an independent certified public accountant.

23. **Representations and Warranties of Lessee.** Lessee represents and warrants that (a) the address stated above is the chief place of business and chief executive office of Lessee, Lessee's full and accurate legal name is as stated above and the information describing Lessee set forth under Lessee's signature below is accurate in all respects; (b) Lessee is either (i) an individual and the sole proprietor of its business which is located at the address set forth above and doing business only under the names disclosed herein, or (ii) a limited liability company or corporation duly organized and validly existing in good standing under the laws of the state of its organization or incorporation, or (iii) a general or limited partnership organized under the laws of the state of its principal place of business set forth in the Lease or the Lease Documents and the individual general partner executing this Master Lease has the full authority to represent, sign for and bind Lessee in all respects; (c) the execution, delivery and performance of this Master Lease and all related instruments and documents (i) have been duly authorized by all necessary action on the part of Lessee, (ii) do not require the approval of any stockholder, partner, manager, trustee, or holder of any obligations of Lessee except such as have been duly obtained, and (iii) do not and will not contravene any law, governmental rule, regulation or order now binding on Lessee, or contravene the operating agreement, charter or by-laws of Lessee, or constitute a default under, or result in the creation of any lien or encumbrance upon the property of Lessee under, any indenture, mortgage, contract or other agreement to which Lessee is a party or by which it or its property is bound; (d) the Lease Documents when entered into will constitute legal, valid and binding obligations of Lessee enforceable against Lessee in accordance with their terms; (e) there are no actions or proceedings to which Lessee is a party, and there are no other threatened actions or proceedings of which Lessee has knowledge, before any governmental authority which, either individually or in the aggregate, would adversely affect the financial condition of Lessee or the ability of Lessee to perform its obligations hereunder; (f) Lessee is not in default under any obligation for the payment of borrowed money, for the deferred purchase price of property or for the payment of any rent under any lease agreement which, either individually or in the aggregate, would adversely affect the financial condition of Lessee or the ability of Lessee to perform its obligations hereunder and (g) the financial statements of Lessee (copies of which have been furnished to Lessor) have been prepared in accordance with generally accepted accounting principles consistently applied and fairly present Lessee's financial condition and the results of its operations as of the date of and for the period covered by such statements, and since the date of such statements there has been no material adverse change in such conditions or operations.

24. **Lessee's Waivers.** **TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES (a) ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A OF THE UCC AND (b) ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE TO RECOVER INCIDENTAL OR CONSEQUENTIAL DAMAGES FROM LESSOR FOR ANY BREACH OF WARRANTY OR FOR ANY OTHER REASON OR TO SET OFF OR DEDUCT ALL OR ANY PART OF ANY CLAIMED DAMAGES RESULTING FROM LESSOR'S DEFAULT, IF ANY, UNDER THE RELATED LEASE.**

25. **UCC Filings.** **LESSEE HEREBY AUTHORIZES LESSOR OR AGENT OF LESSOR TO AUTHENTICATE AND/OR FILE ALL UCC FINANCING STATEMENTS AND AMENDMENTS THAT IN LESSOR'S SOLE DISCRETION ARE DEEMED NECESSARY OR PROPER TO SECURE OR PROTECT LESSOR'S INTEREST IN EQUIPMENT IN ALL APPLICABLE JURISDICTIONS.** Lessee hereby ratifies, to the extent permitted by law, all that Lessor shall lawfully and in good faith do or cause to be done by reason of and in compliance with this section. Lessee shall provide written notice to Lessor at least thirty days prior to any contemplated change in Lessee's name, jurisdiction of organization or chief executive office address.

26. **Miscellaneous; Governing Law.** (a) Time is of the essence with respect to each Lease. Any failure of Lessor to require strict performance by Lessee or any waiver by Lessor of any provision of a Lease shall not be construed as a consent or waiver of any provision of such Lease. The Lease will be binding upon Lessor only if executed by a duly authorized officer or representative of Lessor. An authorized signer of Lessee shall execute the Lease Documents on Lessee's behalf. Any provision of a Lease that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof. Captions are intended for convenience or reference only, and shall not be construed to define, limit or describe the scope or intent of any provisions hereof. Lessee will promptly execute or otherwise authenticate and deliver to Lessor such further documents, instruments, assurances and other records and take such further action as Lessorr may reasonably request in order to carry out the intent and purpose of this agreement and each Lease and to establish and protect the rights and remedies created or intended to be created in favor of Lessor hereunder and thereunder.

**(b) EACH LEASE IS BEING DELIVERED IN, AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF, THE STATE OF TEXAS, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, WITHOUT GIVING EFFECT TO ANY CHOICE OF LAW OR CONFLICT OF LAWS WHICH WOULD RESULT IN THE APPLICATION OF THE LAW OF ANY OTHER STATE.**

(c) Any dispute, claim or controversy arising out of or relating to any Lease or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Dallas, Texas before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules, including Rules 16.1 and 16.2 of those Rules as in effect on the date hereof. Judgment on the arbitration award may be entered in any court specified in Section 26(e). This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from any court specified in Section 26(e). The parties shall maintain the confidential nature of the arbitration proceeding and the award, including the hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision.

**(d) NOTWITHSTANDING THE FOREGOING, LESSOR AND LESSEE HEREBY EACH WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO EQUIPMENT OR EACH LEASE OR ANY OTHER LEASE DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY IN ANY ACTION OR PROCEEDING TO WHICH LESSOR OR LESSEE MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR THE OTHER LEASE DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY LESSOR AND LESSEE WHO EACH ACKNOWLEDGE THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO EACH LEASE AND THE LEASE DOCUMENTS.**

(e) Without limiting the foregoing, if the provisions of Section 26(c) are not enforceable and, in any case seeking provisional remedies in aid of arbitration or a judgment on an arbitration award, any judicial proceeding arising out of or relating to this Lease shall be brought in any state or federal court of competent jurisdiction in Harris County, Texas and each of the parties hereto (i) accepts the exclusive jurisdiction of such courts and any related appellate court and agrees to be bound by any judgment rendered by any such court in connection with any such proceeding and (ii) waives any objection it may now or hereafter have as to the venue of any such proceeding brought in such court or that such court is an inconvenient forum. The foregoing shall not prevent any action in any other court to enforce a judgment or to acquire or reacquire possession of any Equipment.

27. **Quiet Enjoyment.** So long as no Default has occurred and is continuing, Lessee shall peaceably hold and quietly enjoy Equipment without interruption by Lessor or any person or entity claiming through Lessor.

28. **Entire Agreement.** Each Lease, together with all other Lease Documents, constitutes the entire understanding or agreement between Lessor and Lessee with respect to the leasing of Equipment covered thereby, and there is no understanding or agreement, oral or written, which is not set forth herein or

8. EXCEPT AS MODIFIED HEREBY, ALL OF THE TERMS, COVENANTS, REPRESENTATIONS, AND CONDITIONS OF THE MASTER LEASE AGREEMENT, LEASE, AND GUARANTY REMAIN IN FULL FORCE AND EFFECT AND ARE IN ALL RESPECTS HEREBY RATIFIED AND AFFIRMED.

IN WITNESS WHEREOF, Lessor and Lessee have executed this Amendment as of the date first above written.

| LESSOR: | LESSEE: |
|---|---|
| First National Capital, LLC | Ameriform Acquisition Company, LLC |
| By: [signature] | By: [signature] |
| Name: Keith Duggan | Name: Mark R. Greer |
| Title: Manager | Title: CFO |

| LESSEE: |
|---|
| Ameriform Acquisition Company DISC, LLC |
| By: [signature] |
| Name: Mark R. Greer |
| Title: CFO |



NATIONAL
CAPITAL
A TRUSTED FINANCIAL RESOURCE

**Amendment**
**To Master Equipment Lease Agreement 21415**
**Dated December 17, 2015**

THIS AMENDMENT dated as of December 17, 2015 amends that certain Master Equipment Lease Agreement No. ██415 dated as of December 17, 2015 (the "Master Lease") between **First National Capital, LLC**, as Lessor, and **Ameriform Acquisition Company, LLC** and **Ameriform Acquisition Company DISC, Inc.**, Lessee (each singularly and collectively referred to herein as "Lessee" and/or "Co-Lessee"). Unless otherwise specified herein, all capitalized terms shall have the meanings ascribed to them in the Master Lease.

RECITALS

A. Lessor and Lessee have determined that certain changes are required to be made in the Master Lease.

B. Lessor and Lessee wish to amend the Master Lease and to address such required changes.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby agree as follows:

1. Section 10 is hereby amended and replaced in its entirety as follows:

   "**10. Repairs and Maintenance.** Lessee, at its cost and expense, shall (a) maintain the Equipment in good repair, condition and working order; (b) properly operate and service all components of Equipment following the manufacturer's written operating and servicing procedures (and/or, as applicable, in accordance with the requirements of applicable insurance policies); (c) furnish all parts, mechanisms, devices and labor required to keep the Equipment in such condition as set forth herein above; and (d) pay all costs of the Equipment's operation. Lessee will cause any Equipment for which a service contract is generally available to be covered by such a contract which provides coverages typical as to property of the type involved and is issued by a competent servicing entity; or, alternatively, maintain such Equipment to the same standards. Replacement parts shall be free and clear of all liens, and shall otherwise constitute Equipment and be fully subject to this Lease as if originally leased hereunder."

2. The second sentence of Section 11 is hereby amended and replaced in its entirety as follows:

   "Lessee agrees that (a) Equipment, when returned, shall be in the condition required by the Lease, and (b) upon Lessor's request, if applicable, Lessee will obtain from the manufacturer (or other maintenance service provider previously approved by Lessor or manufacturer) a certificate stating that such Equipment qualifies for full maintenance service at the standard rates and terms then in effect."

3. Section 12(a) is hereby amended and replaced in its entirety as follows:

   "(a) LESSEE SHALL NOT, WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, WHICH CONSENT SHALL NOT BE UNREASONABLY WITHHELD, (i) SELL, ASSIGN, TRANSFER, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THE LEASE, EQUIPMENT OR ANY INTEREST THEREIN, (ii) RENT, SUBLET OR LEND EQUIPMENT TO ANYONE OTHER THAN LESSEE OR LESSEE'S AFFILIATES OR (iii) PERMIT EQUIPMENT TO BE USED BY ANYONE OTHER THAN THEIR RESPECTIVE QUALIFIED EMPLOYEES. LESSEE ACKNOWLEDGES THAT IT REMAINS PRIMARILY LIABLE FOR ALL OBLIGATIONS HEREUNDER NOTWITHSTANDING ANY USE BY AN AFFILIATE."

4. Section 14 is here by amended by deleting the following phrase: "and products liability coverage"

5. Section 18(a)(v) is hereby amended and replaced in its entirety as follows:

   "(v) Lessee or any Guarantor violates or fails to perform any provision or covenant of either this Lease or, or Lessee is in Default (not cured or waived prior to the expiration of any applicable cure period, if any) under any other loan, lease or credit agreement (including but not limited to all credit facilities or agreements provided by any financial institution) or any acquisition or purchase agreement with Lessor or any other party;"

6. Section 18(a)(viii) is here by amended by adding the following phrase to the end:

   "(which consent shall not be unreasonably withheld);

7. Section 22 is hereby amended and replaced in its entirety as follows:

   "**22. Financial and Other Data**. During the Term hereof, Lessee shall furnish Lessor (a) as soon as available, and in any event within one hundred twenty days after the last day of each fiscal year, financial statements of Lessee and each Guarantor and (b) from time to time as Lessor may reasonably request, other financial reports, information or data (including federal and state income tax returns) and quarterly or interim financial statements of Lessee and each Guarantor. All annual financial statements shall be audited (or if audited information is not available, compiled or reviewed) by an independent certified public accountant."

[SIGNATURE PAGE FOLLOWS]

therein. No Lease may be amended except by a writing signed by Lessor and Lessee. Delivery of an executed Lease Document by facsimile or any other reliable means shall be deemed as effective for all purposes as delivery of a manually executed copy. Lessee shall provide to Lessor the manually executed original of any Lease Document delivered by facsimile within five days.

29. More than One Lessee. If more than one person or entity executes the Lease Documents as "Lessee," the obligations of "Lessee" shall be deemed joint and several and all references to "Lessee" shall apply both individually and jointly.

30. Disclaimer of Warranties. LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, TITLE TO, DESIGN, OPERATION, CONDITION, OR QUALITY OF THE MATERIAL OR WORKMANSHIP IN, EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE ABSENCE OF LATENT OR OTHER DEFECTS (WHETHER OR NOT DISCOVERABLE), LACK OF INFRINGEMENT ON ANY PATENT, TRADEMARK OR COPYRIGHT, AND LESSOR HEREBY DISCLAIMS ALL SUCH WARRANTIES; IT BEING UNDERSTOOD THAT THE EQUIPMENT IS LEASED TO LESSEE "AS IS, WHERE IS." LESSEE HAS MADE THE SELECTION OF THE EQUIPMENT FROM THE SUPPLIER BASED ON ITS OWN JUDGMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE ON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. IN NO EVENT SHALL LESSOR BE LIABLE FOR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES. LESSOR HEREBY ASSIGNS TO LESSEE FOR THE TERM OF EACH LEASE WITHOUT RECOURSE AND FOR SO LONG AS LESSEE IS NOT IN DEFAULT UNDER ANY LEASE, ANY WARRANTY PROVIDED BY THE SUPPLIER.

31. Execution in Counterparts. The Master Lease and all other Lease Documents may be executed in several counterparts and by different parties hereto or thereto on separate counterparts, each of which when so executed or otherwise authenticated and delivered shall be an original, but all such counterparts shall together consist of one and the same instrument; except, to the extent that any Lease Documents constitute chattel paper under the UCC, no security interest therein may be created other than through the transfer or possession of the original counterpart, which shall be identified by Lessor.

32. Software. To the extent that any Schedule relates to Software:

(a) Lessee acknowledges that (i) all Software is furnished to Lessee under one or more separate license agreements ("License Agreement(s)" governing Lessee's rights thereto, (ii) the Lease does not convey any explicit or implicit license for the use of Software or other intellectual property relating to Equipment, and (iii) Lessor does not hold title to any Software and Lessee is or shall be the licensee of such Software directly from the Licensor.

(b) Lessee shall not amend, modify or otherwise alter, any term or condition of any License Agreement, including, without limitation, any such term or condition related to (i) payment of any amounts due thereunder, (ii) any liabilities or obligations of Lessee as licensee, (iii) the payment of late fees on past due amounts, or (iv) the payment of applicable taxes; provided, however, that this provision shall not apply to those terms or conditions relating solely to amounts owing to Licensor which have not been financed under the Lease.

(c) Lessee and Lessor each further agrees that any operation system software supplied with the Equipment is not included within the above definition of "Software" and shall be returned with the Equipment at the end of the Term, in accordance with section 11 of this Master Lease.

(d) Lessee agrees to hold Lessor harmless and indemnify and reimburse Lessor for any loss or cost associated with any violation of the License Agreement(s) by Lessee, including but not limited to unauthorized use, disclosure, transfer of software and patent or copyright infringement. If Lessee is found to be using any portion of the Software after the termination of the Lease (as defined in the Equipment Schedule) or after an occurrence of Default or if Supplier terminates a license or Lessee's right to use the Software for an alleged breach of all or any portion of the License Agreement(s), Lessee agrees that all liquidated damages be payable immediately by Lessee to Lessor in an amount decided in Lessor's full discretion, but not to be less than three (3) times the amount paid by Lessor for the Software.

**IN WITNESS WHEREOF**, Lessor and Lessee have executed this Master Lease as of the day and year first above written.

Lessor:

FIRST NATIONAL CAPITAL, LLC

By: [signature]

Name: Keith Duggan

Title: Manager

Lessee:

AMERIFORM ACQUISITION COMPANY, LLC

By: [signature]

Name: Mark R. Greer

Title: CFO

Co-Lessee:

AMERIFORM ACQUISITION COMPANY DISC, INC.

By: [signature]

Name: Mark R. Greer

Title: CFO